UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TALMAN HOWARD,
    Plaintiff,                                                   Case No. 3:20-cv-1020

v.

BRIGHTWAY INSURANCE, INC.
    Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS
## COUNTS II-IV OF PLAINTIFF'S COMPLAINT

Defendant, Brightway Insurance, Inc. ("Brightway"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure respectfully moves this Court to dismiss Counts II-IV of Plaintiff's Complaint [DE 1] for failure to state a claim on which relief can be granted.[1] In support of its motion, Brightway states as follows:

Plaintiff's claims for breach of contract and the implied duty of good faith and fair dealing do not state any plausible claim for relief. Common sense and clear inconsistencies in Plaintiff's allegations demonstrate that Brightway paid Plaintiff all amounts he was due.

---

[1] Brightway's understanding is that Rule 12(a)(4) of the Federal Rules of Civil Procedure automatically extends the time a party has to answer a complaint until after the court has ruled on a pending motion to dismiss, even where the motion to dismiss is only directed at a portion, but not all, of the claims set forth in the complaint. *See Ferk v. Mitchell*, No. 14-cv-21916, 2014 WL 7369646, at *1, n1 (S.D. Fla. Dec. 29, 2014) (noting that defendant elected to wait until the court ruled on the partial motion to dismiss before responding to count V); *Pushko v. Klebener*, No. 3:05-cv-211-J-25HTS, 2005 WL 7460162, at *1 (M.D. Fla. June 10, 2005) (holding that based on "the clear weight of authority, it is concluded the filing of a motion to dismiss a portion of a complaint postpones equally the time for answering every part of the pleading"); *Beaulieu v. Bd. Of Trustees of Univ. of West Fla.*, Case No. 3:07-cv-30, 2007 WL 2020161, *2 (N.D. Fla. July 9, 2007) (collecting cases examining Rule 12(a)(4) and Rule 12(b)(6) and concluding that "a party need not file an answer while a partial motion to dismiss is pending," and "[d]efendant's motion to dismiss, therefore, automatically extends its time to answer under Rule 12(a)(4) until after the court has ruled on [d]efendant's motion to dismiss"). If this Court requires an answer to Count I of this Complaint prior to ruling on this motion to dismiss, Brightway respectfully requests seven (7) days to file its answer.

In January 2015, Brightway and Plaintiff entered into a Letter Agreement (defined below) regarding the terms of Plaintiff's compensation. In addition to a generous base salary, Brightway agreed to pay Plaintiff bonuses tied to growth, company distributions, and any sale event. Plaintiff has not, and cannot, identify a breach of any aspect of the Letter Agreement; he was fully paid according to the plain language of the Letter Agreement. Recognizing this, Plaintiff seeks to rewrite and add terms to the Letter Agreement under the guise of the implied duty of good faith and fair dealing.

First, Plaintiff's claim that he was wrongfully denied a bonus measured as 2% of any full or partial sale during his employment flouts the facts and the plain terms of the Letter Agreement. Plaintiff concedes that the owners have not sold any part of Brightway and that a hoped-for sale did not come to fruition. It is undisputed that Brightway did not breach its agreement to pay Plaintiff 2% of the net proceeds of a sale. Plaintiff attempts to circumvent this undisputed fact by arguing that the bonus provision implied an indefinite term of employment and that Brightway violated this non-existent term by "illegally" terminating his employment. Plaintiff's contention clearly contradicts Florida's well-established law on the employment at-will doctrine and impermissibly reads a new term into the agreement.

Next, Plaintiff's claim that Brightway miscalculated his bonus measured as 2% of distributions is similarly without merit. Under the Letter Agreement, Brightway agreed to pay Plaintiff a bonus equal to 2% of the total non-income tax related distributions made by the company. Plaintiff concedes that he owned no equity in Brightway and argues the 2% bonus was negotiated because he had no equity ownership and would receive no

2

distributions from the company. Plaintiff also concedes that Brightway paid him a bonus equal to 2% of the distributions paid by the company. Plaintiff inexplicably argues that his *bonus* should have been combined with the company's *distributions* to calculate his *bonus*. Plaintiff's circular reading presents a mathematical impossibility and is contradicted by the plain language of the Letter Agreement. Equally unsupported is his attempt to read into the agreement an obligation for Brightway to "gross up" his 2% bonuses.

Finally, Plaintiff's claim that Brightway failed to pay his year-over-year growth bonus is belied by Plaintiff's own allegations. If Brightway's net income increased by more than 5% over the prior year, Plaintiff was entitled to a bonus equal to 8% of the year-over-year growth. Plaintiff admits that he was paid 8% of net income growth but claims that the Company understated its net income by incurring the cost of certain unspecified meals, rents, and charitable contributions. Yet the Complaint is devoid of facts to support that the referenced expenses were not business related, that he ever challenged the expenses, or how they impacted the company's growth in net income. As alleged by Plaintiff, the Company's alleged methods of undermining his growth bonus are implausible and, at best, incomplete.

For these reasons and the reasons discussed herein, Counts II-IV of Plaintiff's Complaint should be dismissed.

## BACKGROUND ALLEGATIONS

Plaintiff began working for Brightway in 2012 as its Chief Marketing Officer. [DE 1] ¶ 8. Brightway promoted Plaintiff to serve as its President beginning in 2013. [DE 1] ¶ 8. Plaintiff served as President without an employment agreement until January 2015, when Brightway and Plaintiff entered in an agreement regarding the terms of Plaintiff's compensation (the "Letter Agreement"). [DE 1] ¶¶ 10-11; [DE 1-1].

According to Plaintiff, David and Michael Miller, owners of Brightway, refused to give him an equity interest in the company. [DE 1] ¶ 11. Instead, Plaintiff's compensation package included a base salary, a year-over-year growth bonus if Brightway's net income increased by more than 5% over the prior year (a "Growth Bonus"), a bonus equal to 2% of the non-income tax distributions made by Brightway (a "Periodic Bonus"), and an agreement to pay Plaintiff 2% of the net proceeds in the event Brightway sold during Plaintiff's employment (a "Sale Bonus"). [DE 1] ¶¶ 10-11; [DE 1-1].

Plaintiff does not dispute that he received his Growth and Periodic Bonuses. Instead, he challenges how the bonuses were calculated and claims that Brightway did not act in good faith in calculating his bonuses. [DE 1] ¶¶ 42-46. It is undisputed that Brightway did not enter into a sale transaction during Plaintiff's employment and the transaction contemplated at the time of his termination did not come to fruition. [DE 1] ¶ 27. Accordingly, Plaintiff alleges only that Brightway breached an implied duty to

provide him perpetual employment or a duty to not act illegally or in bad faith. [DE 1] ¶ 52.

ACTIVE:12484074.4

## MEMORANDUM OF LAW

### A. The Motion to Dismiss Standard

The standard for assessing a motion to dismiss for failure to state a claim is well known, however, given the implausibility of Plaintiff's claims, bears repeating. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual mater, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557); *see also American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) ("[f]actual allegations must be enough to raise a right to relief above the speculative level").

The courts have adopted a two-pronged approach to evaluating a motion to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 1950). The Court "may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest

lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *American Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 1951-52). "Determining whether a complaint states a plausible complaint for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n] – 'that the pleader is entitled to relief." *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). "[W]hen plaintiffs 'have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *American Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

B. **Plaintiff's Breach of Contract and Breach of Implied Duty of Good Faith and Fair Dealing Claims (Counts II-IV) Must be Dismissed.**

Plaintiff brings five claims stemming from the Letter Agreement. In Count III, Plaintiff alleges Brightway breached the implied duty of good faith and fair dealing with respect to the Sale Bonus by terminating Plaintiff's employment. [DE 1] ¶¶ 51-54. With respect to the Periodic Bonus, Count IV alleges Brightway breached the Letter Agreement by "failing to pay Mr. Howard bonuses in accordance with the 2% Provision" and Count II alleges Brightway breached its corresponding implied duty of good faith and fair dealing. [DE 1] ¶¶ 44-46; 63. With respect to the Growth Bonus, Count IV alleges Brightway breached the Letter Agreement by "not paying Mr. Howard the 5% Calculation bonus based on the actual or true net income results" and Count II alleges that Brightway breached its corresponding implied duty of good faith and fair dealing. [DE 1] ¶¶ 42-43; 59.

7

To state a claim for breach of contract, Plaintiff must allege (1) a valid contract; (2) a material breach; and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). The implied duty of good faith and fair dealing is not an independent term of a contract, but rather modifies the meaning of the explicit terms of a contract. *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990); *see also Burger King Corp. v. Holder*, 844 F. Supp. 1528 (S.D. Fla. 1993) (dismissing claim for breach of implied covenant of good faith and fair dealing when there is no corresponding breach of an explicit term of the contract). "The covenant is implied as a gap-filling default rule where the terms of the contract vest a party with substantial discretion, requiring that party to act in a commercially reasonable manner and limiting its ability to act capriciously to contravene the reasonable expectations of the contract counterparty." *Librizzi v. Ocwen Loan Servicing, LLC*, 120 F. Supp. 3d 1368, 1378 (S.D. Fla. 2015). Florida courts have refused to allow a claim for breach of the implied duty of good faith and fair dealing under two circumstances: "(a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999). See also *QBE Ins. Corp. v. Chalfonte Condo. Apartment Assoc., Inc.*, 94 So. 3d 541 (Fla. 2012).

1. <u>Plaintiff was not entitled to a Sale Bonus because there was no Sale</u>

Under the Letter Agreement, Brightway agreed to pay Plaintiff a Sale Bonus if some or all of the company were sold during the time Brightway employed Plaintiff:

> [I]f during your employment at Brightway Insurance the company is either sold or partially sold, you will also

> receive 2% of the net proceeds after taxes and expenses from any transaction.

[DE 1-1]. It is undisputed that a sale did not occur during Plaintiff's employment. Plaintiff also concedes that the transaction contemplated at the time of his termination did not proceed. [DE 1] ¶ 27. Plaintiff therefore only alleges a breach of the duty of good faith and fair dealing with respect to the Sale Bonus (Count III).

"[A] claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached." *Ins. Concepts & Design, Inc. v. Healthplan Services, Inc.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001); *see also QBE Ins. Corp.*, 94 So. 3d 541; *Weaver*, 169 F.3d 1310. The duty of good faith and fair dealing "is not an undertaking that can be breached apart from those [explicit] terms." *Alan's of Atlanta, Inc.*, 903 F.2d at 1429. Plaintiff cannot identify a breach of an express term of the Letter Agreement in connection with the Sale Bonus because a sale did not occur. This is fatal to his breach of implied duty of good faith and fair dealing claim.

In an attempt to avoid this obvious deficiency, Plaintiff argues that the issue is not whether a transaction actually occurred, but rather whether Plaintiff "had a reasonable expectation that Brightway would not terminate Mr. Howard on an illegal, bad faith basis which would have the effect of denying him the 2% payout." [DE 1] ¶ 52. Plaintiff is really making two distinct arguments. First, that the Letter Agreement contains an implicit agreement to continue Plaintiff's employment until such time as Plaintiff receives a Sale Bonus. Plaintiff asks the Court to re-write the Letter Agreement to

9

ACTIVE:12484074.4

incorporate this new term. And, second, that the Letter Agreement creates a duty that Brightway not act illegally. While Brightway acknowledges that it should not act illegally, this duty does not emanate from the Letter Agreement.

The Letter Agreement is silent as to any proposed term of continued employment. Accordingly, under Florida law, Plaintiff's employment was at will and could be terminated by either party, at any time. *See Olsen v. Allstate Ins. Co.*, 759 F. Supp. 782, 786 (M.D. Fla. 1991) ("However, where the contract is of indefinite duration, an employer may terminate the employee at will, unless prohibited by contractual language, without the employee having an action for breach of contract.") (citing *Jarvinen v. HCA Allied Clinical Lab, Inc.*, 552 So. 2d 24 (Fla. Dist. Ct. App. 1989); *DeMarco v. Public Super Markets, Inc.*, 360 So. 2d 134 (Fla. Dist. Ct. App. 1978), *aff'd*, 384 So. 2d 1253 (Fla. 1980)). The Letter Agreement does not contain a set term of employment and the potential existence of a transaction did not guarantee his continued employment under its terms. Plaintiff cannot circumvent Florida's employment at will doctrine or the express terms of the Letter Agreement by reading an unstated obligation into the contract. *See Miller v. Morris Comm'n Co.*, 2005 WL 8159674, *7 (M.D. Fla. July 22, 2005) ("Using the covenant of good faith and fair dealing to read unstated obligations into the contract would impermissibly 'override the express terms of the agreement between the parties.'") (quoting *Healthplan Serv. Inc.* 785 So. 2d at 1235; *Hosp. Corp. of Am. v. Fla. Med. Ctr. Inc.*, 710 So. 2d 573, 575 (Fla. Dist. Ct. App. 1998)).

Plaintiff further argues that Brightway breached an implied duty not to terminate his employment "illegally." In Florida, a claim for "wrongful termination will not lie"

when an employee is at will. *Lozano v. Marriott Corp.*, 844 F. Sup. 740, 742 (M.D. Fla. 1994) (citing *Lurton v. Muldon Motor Co.*, 523 So. 2d 706 (Fla. Dist. Ct. App. 1988) (citing *DeMarco*, 360 So. 2d 134, *aff'd*, 384 So. 2d 1253 (Fla. 1980))). Therefore, an at will employee's termination is only "illegal" if it violates some specific state or federal statute. Count I of Plaintiff's Complaint (which is not the subject of this motion) alleges that Brightway unlawfully terminated Plaintiff's employment because of his age. Under Count I, Plaintiff seeks remedies under the Age Discrimination in Employment Act (the "ADEA"). *See* [DE 1] ¶ 54. Plaintiff is not entitled to modify or enhance his remedies under the ADEA by characterizing his allegations as the breach of an implied contractual duty. Contracts do not create implied duties to comply with the law. *See Hosp. Corp. of Am.*, 710 So. 2d at 574-75 ("there is no recognized independent cause of action for breach of a duty to obey laws…"); *Miller*, 2005 WL 8159674 at *7. As an at will employee, absent a violation of the ADEA (or other state or federal law), Plaintiff cannot characterize his termination as "illegal."

Without a sale, and without an express term guaranteeing Plaintiff's continued employment, Plaintiff cannot identify a breach of any express term of the Letter Agreement related to the Sale Bonus. Plaintiff's breach of the implied duty of good faith and fair dealing claim must fail.

    2.    <u>Plaintiff received Periodic Bonuses</u>

Under the Letter Agreement, Brightway agreed to pay Plaintiff Periodic Bonuses:

> Throughout the remaining term of your employment at Brightway Insurance, you will continue to receive from time to time, in the form of a bonus, 2% of all non-income tax related distributions made by the company.

[DE 1-1]. Plaintiff does not dispute that he received bonuses calculated as 2% of all distributions paid by the company. Instead, Plaintiff asks that the Court substantially rewrite the Letter Agreement to (1) base Plaintiff's *bonus* on the sum of the company's *distributions* and Plaintiff's *bonus* (a mathematical impossibility) and (2) gross up Plaintiff's bonus to account for Plaintiff's share of payroll taxes. These arguments read new terms into the Letter Agreement that are illogical and implausible on their face.

In the corporate world, a distribution is commonly and legally understood to be a payment issued by a company to its <u>owners or shareholders</u>. *See, e.g.*, Black's Law Dictionary (11th ed. 2019) (defining a corporate distribution as "[a] corporation's direct or indirect transfer of money or other property, or incurring of indebtedness to or for the benefit of its shareholders, such as a divided payment out of current or past earnings"). Plaintiff admits that he was not an owner of Brightway and held no equity interest in the company. [DE 1] ¶ 11.

The Letter Agreement distinguishes between the terms *bonus* and *distributions*. Plaintiff's bonus was to be calculated based on the company's distributions. Plaintiff asks this Court however to infer that his *bonus* was intended to be a part of the company's *distributions*. Plaintiff thereby contends that Brightway should have added Plaintiff's *bonus* to the company's *distributions* in order to calculate his *bonus*. Plaintiff's argument defeats itself and his interpretation overrides the express terms of the Letter Agreement, which distinguishes between Plaintiff's "bonus" and the company's "distributions." *Ins. Concepts & Design, Inc.*, 785 So. 2d at 1234 ("the implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties").

Plaintiff attempts to take his revisionism even one step further, alleging that Brightway was also obligated to gross up his bonus payment so that he would receive a net of 2% of the total distributions, after taxes had been deducted from his bonus. [DE 1] ¶ 62. This is wholly unsupported by the plain language of the Letter Agreement. There is nothing in the Letter Agreement that addresses Plaintiff's payroll taxes or that suggests the Periodic Bonus will be grossed to cover Plaintiff's share of his taxes. Plaintiff also offers no explanation for his different treatment of the Periodic Bonus from the Growth or Sale Bonuses, neither of which he has alleged were supposed to be grossed up to account for his taxes. Plaintiff asks this Court to read a term into the Letter Agreement which does not exist.

Plaintiff's allegations do not support either a breach of the contract or a breach of the implied duty of good faith and fair dealing.

3. <u>Plaintiff received his annual Growth Bonus</u>

Under the Letter Agreement, Brightway agreed to pay Plaintiff a Growth Bonus:

> You will also be entitled to receive an annual year-end bonus, which will be calculated as follows… :  If the year-over-year pre-tax net income results for Brightway Insurance exceed 5%, they you will received a year-end bonus equal to 8% of the year over year growth.

[DE 1-1]. Plaintiff does not dispute that Brightway paid him an annual year-over-year Growth Bonus. Nor does Plaintiff allege that Brightway understated its annual year-over-year growth in any given year. Plaintiff challenges only Brightway's calculation of net income, arguing that Brightway's net income was understated due to certain unspecified meals, rents, and charitable donations. [DE 1] ¶ 42. According to Plaintiff, this "caused

the company to misstate and understate the actual pre-tax net income underlying Mr. Howard's bonus calculation" resulting in a breach of the Letter Agreement and of the implied duty of good faith and fair dealing. [DE 1] ¶ 43; Counts II, IV. Even accepting each of Plaintiff's allegations as true, Plaintiff's claims are not plausible. At best, they are incomplete.

Notably missing from Plaintiff's Complaint are factual allegations to support that the expenses Plaintiff complains of were not business expenses. Plaintiff complains that the Millers expensed meals to Brightway. Plaintiff has not alleged that those meals were unrelated to the business. As Brightway owners, it is conceivable (and was the case) that the Millers expensed business lunches to company. Next, Plaintiff complains that Brightway paid rent on a building that "it owned." [DE 1] ¶ 42. If Brightway owned the building, it would pay rent only to itself. This would not reduce the company's net income. Finally, while Plaintiff opines that charitable donations should have been made by the Millers personally, he has not pled any facts to support that the charitable donations were not made on behalf of or for the benefit of the business. Many companies, especially those who are trying to build a name for themselves within the communities they serve, make charitable donations from company funds. Plaintiff has not alleged any nefarious or capricious conduct outside of what is commercially reasonable. Instead, he has identified typical corporate conduct which does not, on its face, support Plaintiff's conclusory allegations of bad faith.

While Plaintiff fails to allege facts to support that any referenced expense was improper, he also boasts about his personal knowledge of and control over Brightway's

finances. Plaintiff served as Brightway's President beginning in 2013, through the date of his termination in 2020. [DE 1] ¶ 8. Plaintiff served as Brightway's President for nearly two years before entering into the Letter Agreement at issue in this claim. [DE 1] ¶¶ 10, 13; [DE 1-1]. Plaintiff also alleges that he was responsible for hiring a new Chief Financial Officer who "provided sound financial management" and was "indispensable to building Brightway and creating value to prospective purchasers." [DE 1] ¶ 13. Finally, Plaintiff takes credit for leading "Brightway to the doorstep of a lucrative sale," touting his "tireless[] efforts to transform Brightway and maximize the value of the company for a potential sale." [DE 1] ¶ 26. Plaintiff's allegations make clear that *he* was in control of Brightway's expenses and net income. Yet Plaintiff does not allege (nor could he) that he ever questioned the meals, rents, of charitable contributions referenced in the Complaint or otherwise objected to the calculation of Brightway's net income during the *seven years* he served as President.

Relatedly, it defies logic that Brightway would minimize its net income to deny Plaintiff an immaterial increase in a year-over-year Growth Bonus while the company was simultaneously attempting to maximize its value to position Brightway for sale. The Court is permitted to infer from Plaintiff's factual allegations obvious alternative explanations which suggest lawful conduct and should do so here. *American Dental Ass'n*, 605 F.3d at 1290.

Finally, Plaintiff's Complaint is devoid of any facts to support the *impact* of these expenses on Plaintiff's Growth Bonus. Plaintiff's bonus was not based on Brightway's net income. Plaintiff's bonus was based on the *growth* in Brightway's net income,

15

comparing one year to the next. Accordingly, business expenses incurred consistently will not reduce the growth of net income from one year to the next. Plaintiff's Complaint is devoid of any allegations about the timing, frequency, or amount of any referenced expense.

In summary, Plaintiff's Complaint is devoid of critical facts needed to nudge his breach of contract or breach of implied duty of good faith and fair dealing claims over the line from "conceivable" to "plausible." *American Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556). As it stands, he does not state a plausible claim for relief relating to the Letter Agreement and his claims should be dismissed.

## CONCLUSION

A claim for breach of the implied duty of good faith and fair dealing will not lie when Plaintiff cannot identify a breach of an express term of the contract. Plaintiff's allegations show he was paid everything he was due under the Letter Agreement. Each of his claims fail.

Plaintiff's failure to identify a breach of contract associated with the Sale Bonus is fatal to his claim. His attempts to circumvent the requirement to show a breach contradicts Florida's long-standing case law regarding the employment at will doctrine and ask this Court to substantially re-write the Letter Agreement.

Plaintiff similarly attempts to read new terms into the Letter Agreement to benefit him with respect to his Periodic Bonuses. Plaintiff asks this Court to ignore the Letter Agreement's use of the terms "bonus" and "distribution" and to instead include Plaintiff's "bonus" in the definition of "distributions" for purposes of calculating Plaintiff's bonus.

16

The argument is illogical and implausible on its face. Plaintiff's further attempt to rewrite the Letter Agreement to include a provision requiring Brightway to gross-up his Periodic Bonuses should be rejected.

Finally, Plaintiff's challenge to reasonable and common business expenses does not state a plausible claim for relief. The Court is permitted to rely on its own judicial experience and common sense when evaluating whether Plaintiff's allegations paint a plausible claim. *Iqbal*, 556 U.S. at 679. When allegations do not permit the court to infer more than the mere possibility of misconduct, the plaintiff's complaint should be dismissed. *Id*. Plaintiff's Complaint is devoid of critical facts to support more than the conclusory allegation that he was wronged.

Plaintiff's allegations show he was paid in accordance with the terms of the Letter Agreement and he cannot plead a plausible claim otherwise. Counts II through IV of Plaintiff's Complaint should be dismissed.

WHEREFORE, Brightway respectfully moves this Court to enter an Order dismissing Counts II-IV of Plaintiff's Complaint and awarding all other relief the Court deems just and proper.

Respectfully submitted this 16th day of October 2020.

**GUNSTER, YOAKLEY & STEWART, P.A.**

*/s/ Holly Griffin Goodman*
David M. Wells
Florida Bar Number 309291
Asghar A. Syed
Florida Bar Number 81735
Holly Griffin Goodman
Florida Bar Number 93213
225 Water Street, Suite 1750

17

        Jacksonville, FL 32202
        (904) 354-1980
        (904) 354-2170 facsimile
        Primary email:    dwells@gunster.com
                                    asyed@gunster.com
                                    hgoodman@gunster.com
        Secondary email:    tjohnson@gunster.com
                                    cstgeorge@gunster.com
        *Attorneys for Brightway Insurance, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

                                        /s/ *Holly Griffin Goodman*
                                        Holly Griffin Goodman